**Larry Bernard SPIKES, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 282S68.**

Supreme Court of Indiana.

Aug. 26, 1985.

Susan K. Carpenter, Public Defender, C.H. Gardner, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen Ransom Radford, Deputy Atty. Gen., Indianapolis, for appellee.

ON REMAND BY ORDER OF THE UNITED STATES SUPREME COURT

No. 84–5035

PIVARNIK, Justice.

This cause has been remanded to us by the United States Supreme Court. The case originally came to this Court on a direct appeal by Defendant-Appellant Larry Bernard Spikes in which we affirmed Appellant's convictions of class B felony burglary, class A felony rape and class A felony criminal deviant conduct. *See Spikes v. State*, (1984) Ind., 460 N.E.2d 954 [DeBruler, J., concurring in result with separate opinion]. Appellant then petitioned

this Court to rehear his cause on the basis of our Issue II which was whether the trial court erred by denying Appellant's Motion to Suppress his fingerprints which were taken from him at the police station prior to his arrest. The Petition for Rehearing was denied on May 10, 1984. Appellant then petitioned the United States Supreme Court for a writ of certiorari. On April 1, 1985, the United States Supreme Court, —— U.S. ——, 105 S.Ct. 1861, 85 L.Ed.2d 155, granted Appellant's Petition for Writ of Certiorari, vacated this Court's opinion cited above and remanded the cause to this Court "for further consideration in light of *Hayes v. Florida*", (1985) 470 U.S. ——, 105 S.Ct. 1643, 84 L.Ed.2d 705. *Hayes* was handed down by the United States Supreme Court on March 20, 1985, and concerned the same issue apparent in Appellant's case. We issue this opinion in response to and in compliance with the remand order of the United States Supreme Court. Said order, in certified form, was received by us sometime after June 10, 1985.

The facts in *Hayes, supra,* are without conflict and were simply stated as follows:

"… Although they had little specific information to tie petitioner Hayes to the crime, after police interviewed him along with 30 to 40 other men who generally fit the description of the assailant, the investigators came to consider petitioner a principal suspect. They decided to visit petitioner's home to obtain his fingerprints or, if he was uncooperative, to arrest him. They did not seek a warrant authorizing this procedure.

Arriving at petitioner's house, the officers spoke to petitioner on his front porch. When he expressed reluctance voluntarily to accompany them to the station for fingerprinting, one of the investigators explained that they would therefore arrest him. Petitioner, in the words of the investigator, then 'blurted out' that he would rather go with the officers to the station than be arrested. App. 20. While the officers were on the front porch, they also seized a pair of herringbone pattern tennis shoes in plain view."

*Hayes,* 470 U.S. at ——, 105 S.Ct. at 1645, 84 L.Ed.2d at 708.

Before trial, Petitioner Hayes moved to suppress the fingerprint evidence obtained by police claiming it was the fruit of an illegal detention. The trial court denied his motion and admitted the evidence without expressing a reason for its ruling. In affirming his conviction, the Florida District Court of Appeals declined to find consent reasoning that in view of the threatened arrest it was "at best, highly questionable" that Hayes voluntarily accompanied the officers to the station. The Florida Court of Appeals also found that the officers did not have probable cause to arrest Hayes until after they had obtained his fingerprints. The Florida Court of Appeals, however, affirmed the trial court while finding no consent by Hayes to be taken to the station and no probable cause to arrest. The Florida Court of Appeals therefore held that the police could transport Petitioner Hayes to the station house and take his fingerprints on the sole basis of their reasonable suspicion that he was involved in a crime.

Florida's decision in *Hayes* was based on *Terry v. Ohio,* (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. *Terry,* however, was confined to a temporary seizure or confrontation of a person, even though in a place where he had a right to be and the police were without probable cause or judicial authority, if the police observed such person either involved in criminal activity or appearing to give reasonable suspicion to the police that he was involved in crime. The United States Supreme Court followed *Terry* with another case which involved not only stopping the suspect on the street or in his home for a temporary investigation, but also involved transporting him to the police station for further investigation. *Davis v. Mississippi,* (1969) 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676. In *Davis,* the police were in the course of investigating a rape and Davis was one of many picked up by the police and brought to the police station for further investigation. The police had no specific reason to suspect Davis in particular other than the fact that

he was a black man like the other suspects and apparently met the general description of the perpetrator. He was taken to the police station without his consent where he was fingerprinted and briefly questioned before being released. The facts were not in conflict that the police took Davis to the station and fingerprinted him without probable cause for his arrest, without a warrant from any court and without Davis' consent to being taken to the station house. The United States Supreme Court reaffirmed *Davis* in *Hayes* and reversed Hayes' conviction.

In the instant case, there was no judicial intervention authorizing the police to take Appellant Spikes into custody and the State stipulated that the police did not have probable cause to arrest him. Our determination then must rest on the question of Appellant Spikes' consent to accompany the police to the police station where he was fingerprinted. Examination of the record in this case reveals that the trial judge, in his findings when denying Appellant's Motion to Suppress, declined to find consent just like the Florida court in *Hayes*. The grounds for the trial court's denial of the Motion to Suppress and the subsequent admission of the fingerprints into evidence therefore was based on the same reasoning used by the Florida court which was rejected by the United States Supreme Court in *Hayes*. The trial court here found that the police were authorized pursuant to Ind. Code § 35–3–1–1 (Burns 1979) [repealed effective September 1, 1982] to detain Appellant for further investigation and the subsequent fingerprinting was justified since the fingerprinting was a simple jailhouse procedure which does not violate a defendant's privilege against self incrimination. *See Jones v. State*, (1977) 267 Ind. 205, 369 N.E.2d 418. Ind.Code § 35–3–1–1 codifies the procedure authorized in *Terry, supra*. The reasoning of the trial court apparently was that since the police are authorized to temporarily stop a person on the street or in his home to investigate or interrogate, that authorization extends to transporting a stopped individual to the police station for a benign procedure such as fingerprinting without violating the United States Fourth Amendment. *Hayes* rejected this proposition, however. The only reference the trial court made in its findings to the issue of Appellant's consent is in the recitation of the evidence on the subject when the trial judge states: "The defendant himself testifying that he did not think he was under arrest but thought and was told that if he did not voluntarily go to the station with the officers, he would be put under arrest." There was other evidence adduced during the hearing on Appellant's motion to suppress and during Appellant's trial that would refute this conclusion and indicate that Appellant Spikes did consent to accompanying the police to the police station for questioning. Officers testified that Appellant told them he would be willing to go to the police station with them but preferred to go in an unmarked car rather than in their marked squad car. Although one of the officers said at one time that Appellant seemed hesitant, the testimony was that Appellant never objected to going with them. Appellant himself testified that he told the officers he would go to the police station with them but also said he was surrounded by four or five police officers and was told by them that if he did not go with them he would be arrested. Officer Tuttle, the officer who transported Appellant to the police station, said he could not recall for sure if he ever told Appellant that he would be arrested if he declined to go with them to the station but Tuttle did not think he had said that. Thus, the facts involving consent are in conflict and the resolution of that fact bound issue is to be determined by the trial judge and not by this Court.

The trial judge in Appellant's case did not make an express finding for the Record as to whether Appellant consented to be transported to the police station, the determinative issue in this case at this point. Of course, this issue was raised and decided when the trial court, without the involvement of a jury, considered Appellant's pretrial Motion to Suppress. Accordingly, Ind. R.App.P. 15(N)(4) gives this Court the au-

thority to order the findings or judgment amended or corrected upon this issue as provided in Ind.R.Tr.P. 53(B). Ind.R.Tr.P. 52(B) authorizes the trial court in this situation to open the judgment, take additional testimony, amend or make new findings of fact and enter a new judgment. This Court now remands this case to the Honorable Gene R. Duffin, Judge of the Elkhart Circuit Court, with instructions to reconsider his findings and judgment pursuant to Ind. R.App.P. 15(N)(4).

This case is remanded to the trial court with instructions.

GIVAN, C.J., and DeBRULER and PRENTICE, JJ., concur.

HUNTER, J., not participating.